[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-10182

Non-Argument Calendar

_____

RACHELLE ARBERMAN,

                                          Plaintiff-Appellant,

versus

PNC BANK, NATIONAL ASSOCIATION,

                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-80983-AMC

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Rachelle Arberman appeals the district court's order granting Defendant-Appellee PNC Bank's motion to dismiss Arberman's negligence claim. For the following reasons, we affirm.

I.    FACTUAL AND PROCEDURAL HISTORY[1]

Arberman's Amended Complaint alleged that PNC Bank ("PNC") negligently failed to protect Arberman from the financial exploitation of an unknown fraudster.

Rachelle Arberman was born in 1949 and resides in Palm Beach County, Florida. On or about August 28, 2020, Arberman "was contacted by a fraudster who falsely claimed to be a federal law enforcement officer." The unknown fraudster ("Doe") told Arberman "that her bank account had been compromised" and that Arberman "must assist federal law enforcement in apprehending the criminal." Doe also told Arberman that if she refused to assist him, she would be investigated as an accomplice to the fraud.

---

[1] Because the procedural posture of this case involves a Rule 12(b)(6) motion, we must accept the allegations of plaintiff's amended complaint as true. *See Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (en banc), *abrogated in part by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007). The facts set forth in this section of the opinion therefore are taken from the amended complaint and construed in the light most favorable to the plaintiff.

From August 28, 2020, to November 3, 2020, Arberman withdrew sums of money from her PNC Bank account, purchased gift cards using her PNC credit and debit cards, and purchased cryptocurrency using her PNC account all for Doe's fraudulent enrichment.

Arberman's Amended Complaint alleged that her withdrawal behavior during the time in which she was sending money to Doe was "wildly inconsistent" with her normal monthly transactions. Over three months, Arberman made over twenty withdrawals from her bank account, some days totaling up to $119,000 in withdrawals. In total, Doe fraudulently induced Arberman to withdraw over $400,000 from her PNC account and transfer those funds in various forms to Doe's "fraudulent enterprises." These withdrawals "raised the suspicion of a bank employee who approached [Arberman] to inquire what was going on." The safety measures in place at PNC "failed to detect [Arberman's] large deposits and withdrawals from its branches in the same day."

At the time of Doe's fraud, Arberman was 71 years old. Prior the fraud, Arberman began to suffer from cognitive and physical decline consistent with that of an aging individual. As a result of Arberman's cognitive decline, she was "slower in making decisions than she was in the past" and "less confident in her decision-making abilities." Arberman alleged that when she was younger, "she was distrusting and it would have been very unlikely that she would fall victim to this type of fraud." Arbeman also alleged that "her ability to provide for her own care or protection was impaired due to the infirmities of aging, namely cognitive decline, and

accordingly she was a vulnerable adult, under section 415.102(28), Florida Statutes.

On May 25, 2022, Arberman filed a complaint in state court alleging the negligence of PNC. The case was removed to federal court, and on August 2, 2022, Arberman filed the Amended Complaint, which brought one count of common law negligence, asserting that PNC breached its duty to report Doe's exploitation of Arberman under Florida's Adult Protective Services Act ("FAPSA"), specifically Section 415.1034(1)(a)(8), by failing to: (1) question the numerous withdrawal requests; (2) take action after the sole employee questioned the withdrawals; (3) flag the continued unordinary behavior in Arberman's account and credit card; (4) take steps to assist Arberman despite having reasonable suspicions of victimization; and (5) to report financial exploitation as required by Florida law. She alleged that "PNC Bank ha[d] a duty to [Arberman] if PNC Bank ha[d] reasonable cause to suspect that [she was] being abused, neglected, or exploited." Arberman sought damages of $428,490.00 and attorneys' fees and costs.

On August 16, 2022, PNC moved to dismiss the Amended Complaint. PNC made three primary arguments. First, the bank argued that Arberman's allegations were insufficient to satisfy the statutory definition of "vulnerable adult" under FAPSA because Arberman "merely regurgitated the statutory definition and asserted sparse allegations to support [her] claim of vulnerability." Additionally on this point, PNC argued that Arberman's own complaint, which alleged that she was in control of her finances and

"had the cognitive and physical ability to purchase cryptocurrency from at least four different vendors," shows that she could perform daily activities and provide for her own care. Second, PNC argued, even assuming Arberman was a vulnerable adult, that Arberman's complaint did not sufficiently allege that she was a victim of "exploitation" under FAPSA. PNC stated that Arberman failed to satisfy the definition of "exploitation" under FAPSA because Doe was not in a "position of trust and confidence" with Arberman and did not know nor should have known that Arberman lacked the "capacity to consent." Finally, PNC argued that no other duty of care applied in this case because the Eleventh Circuit has made clear that Florida law does not require banks to investigate transactions made by authorized users.

Arberman responded to PNC's motion to dismiss. She first argued that PNC had a common law duty to protect Arberman where at least one employee expressed reasonable suspicion that she was being exploited. Next, Arberman argued that she plausibly alleged that she was a "vulnerable adult" under FAPSA due to her need for assistance providing for her own protection and her advanced age that has made her more easily influenced by those seeking to exploit older adults. Finally, she argues that her exploitation falls within FAPSA because the statute does not "necessitate that the taking, misappropriation, misuse, or transfer be done directly by the individual exploiting the vulnerable adult."

PNC replied, first arguing that its alleged actions did not create a duty of care where the transactions were executed by

Arberman herself. PNC repeated its arguments that Arberman's age and conclusory statements alone do not sufficiently allege her status as a vulnerable adult. As to "exploitation," PNC states that Arberman misses the point that a critical element of "exploitation" is that the person exploiting must be in a "position of trust and confidence" or knew or should have known that the vulnerable adult lacked the "capacity to consent."

On November 30, 2022, a hearing was held on the motion, where Arberman attempted to satisfy the requirements for "exploitation" by arguing that Doe was in a position of trust and confidence with Arberman and that he should have known that she lacked the capacity to consent because she fell victim to his scheme.

On December 19, 2022, the district court issued an order granting PNC's motion to dismiss. The district court first analyzed Arberman's complaint under FAPSA, concluding that Arberman did not plausibly allege that she was a "vulnerable adult." Noting that FAPSA does not "require[] complete dependency to reach 'vulnerable adult' status," but does require "impairment of a person's performance of daily activities," the district court concluded that Arberman's "generalized allegations do not support such an impairment." The fact that Arberman traveled to multiple branches on various days, purchased cryptocurrency via online vendors, and sent cash withdrawals at other vendors weighed against her allegations of "vulnerable adult" status, as did the Amended Complaint's lack of allegations that Arberman needed assistance for daily living.

As to "exploitation" under FAPSA, the district court also agreed with PNC. The court determined that Doe did not fall into any of the specified categories sufficient to occupy a "position of trust and confidence," and that Arberman did not allege that Doe had reason to know of any alleged "lack of capacity." The district court noted that "while transferring $400,000 to a person believed to be a law enforcement officer could establish that [Arberman] makes irresponsible financial decisions," it does not sufficiently allege that Doe knew that Arberman lacked "sufficient understanding to make and communicate responsible decisions" regarding her property.

Having established that Arberman failed to state a claim for negligence for FAPSA violations, the district court further concluded that Arberman identified no other duty on the part of PNC that could support her negligence claim. Although Arberman alleged a baseline duty of care owed, the district court noted that "banking institutions do not have a duty under Florida law to investigate transactions made by authorized users and account holders." Determining that no duty under FAPSA or otherwise was owed to Arberman in this case, the district court dismissed her case with prejudice and entered judgment in favor of PNC.

Arberman timely appealed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order of dismissal, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Mesa Valderrama*

*v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005). A complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.  ANALYSIS

On appeal, Arberman argues that the district court erred by: (1) determining that the FAPSA was inapplicable to Arberman where a PNC employee had a reasonable suspicion of a violation; (2) determining that the Amended Complaint failed to plausibly allege that Arberman is a "vulnerable adult"; (3) determining that the Amended Complaint failed to plausibly allege that Arberman was the victim of "exploitation"; and (4) concluding that the Amended Complaint failed to plausibly allege that PNC had a baseline duty of care to Arberman. **4–5.**)

To state a claim for negligence under Florida law, Arberman was required to prove four elements: (1) a duty requiring PNC to conform to a certain standard of conduct; (2) a breach of that duty by PNC; (3) a causal connection between the breach and an injury to Arberman; and (4) loss or damage to Arberman. *See Clay Elec. Co–op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). At issue here is the first requirement, PNC's alleged duty to Arberman. Under Florida law, "[d]uty exists as a matter of law and is not a factual question for [a] jury to decide." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (second alteration in original) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)). Florida law recognizes four sources of duties of care: statutes and regulations, judicial interpretations of legislation, judicial decisions, and

duties arising from the facts of a particular case. *See Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227–28 (Fla. 2010), *receded from on different grounds in Lieupo v. Simon's Trucking, Inc.*, 286 So. 3d 143 (Fla. 2019).

FAPSA mandates that banks report when one "knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited . . . immediately report such knowledge or suspicion to the central abuse hotline." Fla. Stat. § 415.1034(1)(a). FAPSA defines "vulnerable adult" as "a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(28).

As to the definition of "exploitation," FAPSA states the following:

> (8) (a) "Exploitation" means a person who:
>
> 1. Stands in a position of trust and confidence with a vulnerable adult and knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult; or

   2. Knows or should know that the vulnerable adult lacks the capacity to consent, and obtains or uses, or endeavors to obtain or use, the vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult.

   (b) "Exploitation" may include, but is not limited to:

   1. Breaches of fiduciary relationships, such as the misuse of a power of attorney or the abuse of guardianship duties, resulting in the unauthorized appropriation, sale, or transfer of property;

   2. Unauthorized taking of personal assets;

   3. Misappropriation, misuse, or transfer of moneys belonging to a vulnerable adult from a personal or joint account; or

   4. Intentional or negligent failure to effectively use a vulnerable adult's income and assets for the necessities required for that person's support and maintenance.

Fla. Stat. § 415.102(8). FAPSA also defines "position of trust and confidence" with respect to a vulnerable adult as the position of a person who:

> (a) Is a parent, spouse, adult child, or other relative by blood or marriage;
>
> (b) Is a joint tenant or tenant in common;
>
> (c) Has a legal or fiduciary relationship, including, but not limited to, a court-appointed or voluntary guardian, trustee, attorney, or conservator; or
>
> (d) Is a caregiver or any other person who has been entrusted with or has assumed responsibility for the use or management of the vulnerable adult's funds, assets, or property.

*Id.* § 415.102(19). "Capacity to consent" is defined as when "a vulnerable adult has sufficient understanding to make and communicate responsible decisions regarding the vulnerable adult's person or property, including whether or not to accept protective services offered by the department." *Id.* § 415.102(4).

In the legislative findings, the Florida Legislature recognized "that there are many persons in this state who, because of age or disability, are in need of protective services" and that "[s]uch services should allow such an individual the same rights as other citizens and, at the same time, protect the individual from abuse, neglect, and exploitation." *Id.* at § 415.101.

Turning to Arberman's arguments, she first contends that FAPSA created a duty owed by PNC once its employee "expressed her reasonable suspicion to suspect that Ms. Arberman was being exploited." The Amended Complaint, however, does not

sufficiently allege that an employee had a reasonable suspicion to suspect that Arberman was being exploited. The allegations stated that Arberman's "transactions were so inconsistent with Plaintiff's normal banking activity that it raised the suspicion of a bank employee who approached Plaintiff to inquire about what was going on." The Amended Complaint also explained that the employee who approached Arberman "specifically raised concerns with Plaintiff about the out of the ordinary transactions." The employee was "[u]pon information and belief . . . the branch manager at the PNC Branch located at 16120 S. Jog Road, Delray Beach, FL 33446." Notably absent from the Amended Complaint is any fact or statement that would reasonably imply that PNC was aware or should have been aware of Arberman's alleged exploitation resulting from her age. The Amended Complaint does not connect the unordinary transactions with potential exploitation, nor does it state that the unnamed PNC employee was even aware of Arberman's age. Without more, Arberman's complaint fails to allege that FAPSA created a duty of care by PNC based on one employee's inquiry. We therefore conclude that the district court did not err in declining to recognize this duty.

Arberman next argues that the district court erred in determining that she failed to plausibly plead that she is a "vulnerable adult." We agree with Arberman. She alleged that (1) she was 71 years old at the time of the fraud; (2) she suffered the cognitive and physical decline consistent with that of an aging individual; (3) she is less confident in her decision-making abilities; (4) she would not have fallen victim to this fraud at a younger age; and (5) her ability

to provide for her own care or protection was impaired due to the infirmities of aging, namely cognitive decline. As such, she plausibly alleged that her ability to perform the tasks of daily life had been impaired by the infirmities of aging. Far from rephrasing the statutory language, Arberman pointed to concrete symptoms and issues related to her advanced age. The Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Accordingly, Arberman plausibly pled that she was a "vulnerable adult" under FAPSA, and we conclude that the district court erred in concluding otherwise.

Arberman also argues that the district court erred in finding that Arberman failed to sufficiently allege that she was "exploited" under FAPSA. Reviewing her Amended Complaint, we conclude that Arberman did not sufficiently allege "exploitation" under FAPSA. First, Doe did not stand in a "position of trust and confidence" with Arberman. The statute's definition of "position of trust and confidence" is plain and unambiguous. Fla. Stat. § 415.102(19). FAPSA outlines specific instances of such positions, and a law enforcement officer does not have the kind of legal and fiduciary relationship with Arberman similar to that of a caregiver, court-appointed guardian, or attorney. *See id.* § 415.102(19). Second, Arberman does not allege that Doe knew or should have known that Arberman lacked "capacity to consent." Nowhere in the Amended Complaint does Arberman allege that Doe had any knowledge of her age, her ability to make decisions, or her

14                Opinion of the Court                23-10182

understanding of decisions about her property. Although patently fraudulent, Doe's alleged behavior is not covered by FAPSA's definition of exploitation. We therefore conclude that the district court did not err in concluding that Arberman failed to allege "exploitation" under FAPSA.

Finally, Arberman argues that the district court erred in finding that Arberman failed to plausibly plead that PNC owed her a baseline duty of care regardless of FAPSA. Florida law does not require banking institutions to investigate transactions. *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968). According to Arberman, however, PNC had a responsibility to her once the PNC employee detected unusual transactions and became suspicious. In support of this contention, Arberman cites *O'Halloran v. First Union National Bank of Florida*, 350 F.3d 1197 (11th Cir. 2003). In *O'Halloran*, we stated that a "bank's responsibility to a depositor may be somewhat heightened when the bank has knowledge that a particular individual ostensibly representing the depositor instead intends to cause financial injury to the depositor." 350 F.3d at 1205. But in this case, all of the transactions, even the unordinary ones, were initiated by Arberman herself, not an unauthorized user. The suspicions of one employee without any knowledge of a fraudulent scheme cannot save Arberman's Amended Complaint from its defect. She did not sufficiently allege that PNC owed her a duty of care to monitor her own transactions. We thus conclude that the district court did not err in concluding as much.

Despite the district court's error in concluding that Arberman did not sufficiently plead that she was a "vulnerable adult," we affirm the dismissal of her case as Arberman failed to plausibly allege that she was the victim of "exploitation" under FAPSA and that PNC owed a baseline duty of care.

## IV.  CONCLUSION

For all these reasons, we affirm the district court's granting PNC's motion to dismiss.

**AFFIRMED.**